UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81210-CIV-RYSKAMP/VITUNAC

CAROL S. GOULD,

    Plaintiff,

vs.

FLORIDA ATLANTIC UNIVERSITY
BOARD OF TRUSTEES,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS FOURTH AMENDED COMPLAINT AND MOTION TO STRIKE

THIS CAUSE comes before the Court pursuant to Defendant's motion to dismiss the fourth amended complaint and motion to strike, filed July 18, 2011 **[DE 41]**.  Plaintiff responded on October 24, 2011 **[DE 59]**.  Defendant replied on November 3, 2011 **[DE 63]**.  This motion is ripe for adjudication.

### I.    MOTION TO DISMISS

The Court has stated the facts of this case in previous orders and will not repeat them here.  Plaintiff now attempts to state a gender-based wage discrimination claim under Title VII, 42 U.S.C. § 2000e-2(a)(1) [DE 35, Count A], and a retaliation claim under Title VII, 42 U.S.C. § 2000e-3(a) [DE 35, Count B].

On a motion to dismiss, while the Court takes the plaintiff's allegations as true, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir.

2003) (citing *South Florida Water Mgm't Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996)). Plaintiff's obligation to provide the grounds for her entitlement to relief requires more than "labels and conclusions," and a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007)). "The point is to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly* and finding allegations insufficient to meet *Twombly* standard). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 127 S.Ct. at 1965. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*, 129 S.Ct. at 1950. A determination of whether a complaint states a plausible claim for relief requires the reviewing court "to draw on its judicial experience and common sense." *Id.* When a plaintiff fails to plead factual content permitting the court to infer more than the mere possibility of misconduct, it has not "shown" entitlement to relief. *Id.* (quoting Fed.R.Civ.P. 8(a)(2)).

A.   **Count A Fails to State a Claim for Gender-Based Wage Discrimination.**

Disparate treatment cases such as *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) provide the appropriate framework for evaluating a gender-based wage discrimination claim under Title VII. *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1018-19 (11th Cir. 1994). Under the *McDonnell Douglas* approach, a female Title VII plaintiff establishes a *prima facie* case of gender-based wage discrimination by showing that she occupies a job similar to that of higher paid males. *Id.* at 1019; *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 598 (11th Cir.

1994) (plaintiff makes a Title VII *prima facie* case of gender-based wage discrimination on a showing that she is female and that her job was substantially similar to higher paying jobs occupied by males). To state a claim for gender-based wage discrimination, Plaintiff must allege material facts to show that her job and qualifications were substantially similar to higher paid male comparators. *See Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004) (explaining that a "comparator must be similarly situated in all relevant respects" and "nearly identical to the plaintiff.") (quotation omitted). Here, Plaintiff alleges immaterial facts and fails to allege sufficient material facts that she was treated less favorably than similarly situated male employees.

### 1. Alleged Facts That Are Irrelevant to the Claims Asserted.

Pursuant to *Iqbal,* this Court begins its analysis of this motion to dismiss by identifying allegations in the complaint that, because they are no more than conclusions or irrelevancies, are not entitled to the assumption of truth. Plaintiff's statement of facts begins with a litany of complaints regarding the administration of the College of Arts and Letters and the Philosophy Department at FAU beginning in or about March 2008. This lengthy chronology of events has nothing to do with Plaintiff's substantive causes of action. Moreover, many of the events may not be considered as evidence of discrimination against Plaintiff because they are time barred. Plaintiff alleged that she filed her complaint with the EEOC after a meeting on July 22, 2010 [DE 35, ¶ 24-25]. Adverse employment actions that occurred more than 300 days prior to the date on which Plaintiff filed her complaint with the EEOC are not actionable. *See Miller-Goodwin v. City of Panama City Beach,* 385 F. App'x 966, 970 (11th Cir. 2010) ("Of the adverse

employment actions claimed by Goodwin, we only consider those occurring on or after July 28, 2006, because her Charge of Discrimination was filed with the [FCRA] March 23, 2007."), *citing National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110 (2002) ("A discreet... discriminatory act 'occurred' on the day that it 'happened.'  A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."). Accordingly, the timely allegations begin with paragraph 17 of the Fourth Amended Complaint, which concerns the time frame commencing mid-March to early April 2010 [DE 35, ¶ 17].  All prior allegations concern a time frame prior to then and are time barred.

2.      **No Factual Allegation of a Similarly Situated Comparator.**

Plaintiff alleges in conclusory fashion the crucial element concerning male comparators, which is necessary to show that she has suffered discrimination based on her gender.  Plaintiff merely asserts the threadbare, conclusory statements that "female professors ...make less money than their male counterparts" [DE 35, ¶ 36] and that despite her outstanding reviews, Plaintiff "was paid well under the salary of similarly situated male employees" [DE 35, ¶ 38].  Plaintiff alleges that "numerous male professors received discretionary raises." *Id.*  Plaintiff alleged that "her salary is nearly 70% lower than the average male full professor faculty and about 25% lower than the average faculty salary, even though she's been a tenured full professor since 1999 at FAU." [DE 35, ¶ 22].

In her response to Defendant's motion to dismiss the Fourth Amended Complaint, Plaintiff contends that her general and conclusory allegations of disparity in pay between "female professors" and "male counterparts" [DE 35, ¶ 36] "clearly elucidates that under any rubric of

comparison between male and female faculty, even the best characterization of male faculty salaries still falls substantially short of the plaintiff's salary." [DE 59, p. 2].

Plaintiff's allegations are insufficient to show that any male comparator similarly situated in all relevant respects to Plaintiff was paid a higher salary than Plaintiff.  Plaintiff seeks to compare her salary to that of all faculty members across all colleges and disciplines at FAU, regardless of years of experience and other relevant criteria.  The "average" of all faculty members' salaries is not an appropriate comparator.  As distinct from mere recitation of the elements of her cause of action, Plaintiff must allege material facts concerning comparators in to state a claim for gender-based wage discrimination.  *See Mulhall,* 19 F.3d at 588 ("plaintiff's suit under ... Title VII rests on the comparison of her pay and job functions with those of persons whom she designates as 'comparators.' She names eight men whose positions are discussed ...based on logical groupings.").  Rather than designating specific comparators, Plaintiff has instead compared her salary to the average salary of all faculty, which is insufficient to state a claim for gender-based wage discrimination.

### 3. Failure to Plead Necessary Intent.

Plaintiff has also failed to allege that Defendant intended to discriminate against her based on her gender.  *Mulhall,* 19 F.3d at 597 (in a Title VII gender-based wage discrimination claim, plaintiff must prove discriminatory intent); *Meeks,* 15 F.3d at 1019 ("The *McDonnell Douglas/Burdine* framework requires a Title VII plaintiff to establish an intent to discriminate on the part of her employer.").  Plaintiff has only alleged that salary decisions were made "at the whim of FAU administrators" [DE 35, ¶ 36].  While salary decisions made at the whim of

administrators may lack a solid foundation, it does not follow that such decisions were made with the intent to discriminate against any employees based on any protected category. Accordingly, Plaintiff has failed to allege sufficient material facts to show that she has a plausible claim for gender-based wage discrimination. The claim for gender-based wage discrimination is dismissed.

**B.      Count B Fails to State a Claim for Retaliation.**

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e-3(a). A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008), *citing Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001)).

  **1.      No Adverse Employment Action: Statements of Pendakur and Headley.**

To satisfy the second element of the *prima facie* case, an employee must establish an "ultimate employment decision" or make some other showing of substantiality in the employment context. *Crawford,* 529 F.3d at 970 (internal citations omitted). Conduct falling short of an ultimate employment decision must, in some substantial way, "alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect[ ] his or her status as an employee." *Id., citing Gupta v.*

*Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000) (quotation and citation omitted).

*Crawford* further explained that the standard for retaliation claims under Title VII has been expanded.  According to *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405 (2006), the type of employer conduct considered actionable has been broadened from that which adversely effects the plaintiffs conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related." *Crawford*, 529 F.3d at 973 (citing *Burlington*, 548 U.S. at 68, 126 S.Ct. at 2415).  In the context of a Title VII retaliation claim, a materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 974 (*citing Burlington,* 126 S.Ct. at 2415).

Plaintiff s factual allegations may be summarized as follows.  Plaintiff alleges that "after the university was notified" of her EEOC charge which was filed in July 2010 [DE 35, ¶ 40], (i) Headley (who was Chair of the Philosophy Department) made certain comments to a sociology professor and a music professor to the effect that "[Plaintiff] could not stand to see a black man in power—that [Plaintiff] was like the Republican Party toward Obama" [DE 35, ¶ 26, 40, 41]; (ii) in a meeting of the chairs of the departments in the College of Arts and Letters, Pendakur mentioned Plaintiff's lawsuit and said that he could refute the charges that in his view were unfounded [DE 35, ¶ 35, 46]; and (iii) at another faculty meeting, Pendakur mentioned that Plaintiff may have a "chance to become department chair" if Headley left the Philosophy Department [DE 35, ¶ 47].  While Plaintiff alleges that these statements were meant to retaliate against her, the alleged statements do not constitute an adverse employment action, have no connection to gender discrimination, and cannot support a claim for retaliation.

8

Moreover, Plaintiff does not allege that she suffered any adverse employment action such as demotion or termination, or any employment decision that substantially impacted her compensation, terms, conditions, or privileges of employment, or adversely affected her status as an employee as a result of Pendakur or Headley's comments. These comments, even if made, would not dissuade a reasonable worker from making or supporting a well-founded charge of discrimination. Even if Plaintiff subjectively believed that Pendakur or Headley made these comments for discriminatory purposes, her belief could not have been objectively reasonable. "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Howard v. Walgreen Co.,* 605 F.3d 1239, 1245 (11th Cir. 2010) (quotation omitted).

   2.   **No Causal Connection or Adverse Employment Action; Other Acts.**

Plaintiff alleges that in the spring of 2011, several months after she filed her judicial complaint, her request for funds for a reception was denied [DE 35, ¶ 44] and she was advised to take a sick day when she requested a day off for the Passover holiday [DE 35, ¶ 48]. Plaintiff did not suffer an adverse employment action in either of these situations. While Plaintiff alleges to have suffered some embarrassment as a result of these acts, such is insufficient to show an adverse employment action for purposes of a retaliation claim. *See Davis v. Town of Lake Park,* 245 F.3d 1239, 1242 (11th Cir. 2010) (employee's claims of loss of self-esteem or loss of prestige in the eyes of others are not protected by Title VII which simply does not extend to "everything that makes an employee unhappy.") (quotation omitted). Furthermore, Plaintiff admits that she

did not suffer the loss of a sick day and was allowed to cancel her class for the Passover holiday [DE 35, ¶ 49]. Moreover, Plaintiff has not alleged any facts showing a direct causal connection between either of these acts and the filing of her EEOC charge and, therefore, has failed to satisfy the causal connection element of *a prima facie* case of retaliation. While a causal connection may be inferred from the close temporal proximity between the protected activity and the adverse action, the Eleventh Circuit has held that a "three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Anderson v. Embarq/Sprint,* 379 F. App'x 924, 930 (11th Cir. 2010) (quotation omitted). Here, the time lapse between the protected expression, the filing of her EEOC charge, and the alleged retaliation was far greater. Additionally, a disparity of at least three to four months exists between the filing of this lawsuit and the acts alleged. Accordingly, Plaintiff has not alleged sufficient material facts to show the causal connection or adverse employment action elements of *a prima facie* case for retaliation.

      3.      **Failure to Exhaust Administrative Remedies.**

Even assuming denial of funds for a reception or requiring Plaintiff to use a sick day for the Passover holiday -- which was promptly corrected -- could be deemed an adverse employment action, Plaintiff did not exhaust her administrative remedies as to those acts. A retaliatory adverse employment action that occurs after the filing of the administrative charge must separately be made the subject of an administrative complaint to comply with the exhaustion requirements of Title VII. *Green v. Office of the Sheriff's Office,* No. 3:99-CV-658-J-21-HTS, 2002 U.S. Dist. Lexis 26485, at *8-9 (M.D. Fla. Nov. 4, 2002). The Eleventh Circuit

has described the relationship between an EEOC charge and the ensuing judicial complaint as follows:

> The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation. No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge. EEOC regulations provide that charges should contain, among other things, `[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.' A 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'

*Thomas v. Miami Dade Public Health Trust,* 369 F.App'x 19, 22 (11th Cir. 2010) (internal citations omitted). "Judicial claims are proper if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but . . allegations of new acts of discrimination are inappropriate." *Id.* (*citing Gregory v. Georgia Dep't of Human Res.,* 355 F.3d 1277, 1279-80 (11th Cir. 2004)). Further, a court must determine if the allegations in the complaint were like or related to, or grew out of, the allegations in the EEOC charge. *Id.* The Court has also warned that "allegations of new acts of discrimination are inappropriate." *Anderson,* 379 F. App'x at 926, (*citing Gregory,* 355 F.3d at 1279-80). *See also Green,* 2002 U.S. Dist. Lexis 26485, at *8-9.

Plaintiff did not include a claim of retaliation in her charge of discrimination filed with the EEOC. Accordingly, only those claims of retaliation that grew out of the allegations in her EEOC charge may be considered. Separate acts of retaliation occurring after the filing of her administrative charge may not be considered because those acts must be made the subject of a separate, timely administrative charge. Accordingly, the retaliation claim is dismissed.

## II. MOTION TO STRIKE

Pursuant to Fed.R.Civ.P. 12(f), the Court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. "Scandalous" (as that term is defined by Federal Rule of Civil Procedure 12(f)), "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Securities and Exchange Comm. v. Lauer,* No. 03-80612-CIV-MARRA, 2007 WL 1393917, at *2 (S.D. Fla. Apr. 30, 2007) (internal quotations and citations omitted). Insinuations that improperly cast a derogatory light on a party have no place in proper pleadings and should be stricken. The filing of a document containing scandalous language is one form of harassment prohibited by Rule 11. *Pigford v. Veneman,* 215 F.R.D. 2, 4 (D.D.C. 2003), *reconsideration denied* 216 F.R.D. 1 (D.D.C. 2003).

### A. Allegation of Anti-Semitism Are Stricken.

In the June 14 order, this Court granted Defendant's motion to strike certain scandalous allegations contained in the Third Amended Complaint, including all allegations that accused Defendant or Pendakur of anti-Semitism. The court stated that the allegations of anti-Semitism were malicious and irrelevant. [DE 33, p. 11]. The Court's November 1, 2011 order imposed Rule 11 sanctions on Plaintiff's counsel for, *inter alia*, including allegations of anti-Semitism in the third amended complaint. Inexplicably, Plaintiff has included an allegation of anti-Semitism in her Fourth Amended Complaint. *See* DE 35, ¶ 22 ("the anti-Semitism of Pendakur"). At the hearing on Defendant's motion for sanctions held on July 14, 2011, Plaintiff's counsel defended

the allegation by claiming that it was only included as one of the topics discussed with "then-interim university president Pritchett".  This explanation is incredulous and blatantly defies the Court's June 14 order striking all assertions of anti-Semitism.  The only relevant topic discussed with Pritchett as alleged by Plaintiff in paragraph 22 of the fourth amended complaint concerned her salary.  It was unnecessary again to disparage Pendakur's reputation by accusing him of being anti-Semitic.  The allegation is mean-spirited, scandalous, and is stricken.

      Defendant also requests sanctions in that the fourth amended complaint defies the June 14 order.  The fourth amended complaint's inclusion of anti-Semitism allegations does defy the June 14 order and is sanctionable.  The Court will not impose a sanction for these violations, however, as the Court already assessed a significant sum against Plaintiff's counsel in the November 1 sanctions order.

**B.    Other Mean-Spirited or Immaterial Allegations Must be Stricken.**

      Rather than support her claims with allegations of material fact, Plaintiff has chosen to attack the reputations of Pendakur, Headley and Banchetti.  To disparage the reputations of Pendakur and thereby Defendant, Plaintiff has accused Pendakur of being incompetent and a "controversial administrator" based solely on an alleged, hearsay petition at another university where Pendakur was employed [DE 35, ¶ 4].  She has accused Headley and Banchetti of having "lied to many other department chairs" and implied that they abused their positions to obtain money from the department [DE 35, ¶ 34].  These allegations have nothing whatsoever to do with Plaintiff's claim of gender-based wage discrimination or the filing of her EEOC charge.  The allegations are plainly scandalous within the meaning of Rule 12(f), in that they improperly

cast a derogatory light on a renowned and highly respected state university and its well-respected administrators. These malicious accusations do not support any viable cause of action and are stricken.

Similarly, all of the allegations concerning how Pendakur became Dean at FAU, his selection of Banchetti as associate dean and his selection of Headley as Chair of the Philosophy Department [DE 35, ¶ 5-16] are irrelevant, immaterial and impertinent. These matters have nothing to do with either Plaintiff's wage being different from similarly situated male employees or retaliation against exercising her statutory rights.

Plaintiff has included the allegations in Paragraphs 5-16 to paint a picture of some grand conspiracy among Pendakur, Banchetti and Headley to mismanage the Philosophy Department, causing turmoil among its members, all of which is totally irrelevant to Plaintiff's claims concerning her salary. Moreover, all of these allegations are time barred and may not be considered by the Court in determining whether Plaintiff has stated a claim for relief because they occurred more than 300 days prior to the date on which Plaintiff filed her EEOC charge.

Finally, Plaintiff makes derogatory allegations against Headley and Banchetti that are plainly contradicted by her own allegations. In paragraph 33, Plaintiff accuses Headley and Banchetti of disparaging Plaintiff's reputation based on hearsay comments from a student named Asha Hanchard. However, Hanchard attributed the hearsay statements concerning Plaintiff to "faculty," not to Headley or Banchetti, accordingly to Plaintiff's own allegations [DE 33, ¶ 33]. Similarly, Plaintiff accuses Headley of calling her a "sociopath" in a conversation with another professor [DE 35, ¶ 42] and refers to Exhibit A, which appears to be an unsigned statement that does not even identify the speaker. Exhibit A, however, contradicts the allegations in paragraph

42 in that it states that Headley called "faculty" sociopaths, not Plaintiff.  These contradictory, inflammatory and impertinent allegations are stricken.

**C.      Improper Damages Claims Must be Stricken or Dismissed.**

Plaintiff's prayer for damages is overbroad.  Plaintiff requests an award of liquidated damages, but neither Title VII nor 42 U.S.C. § 1981a provide for such an award.  In addition, Plaintiff asks this Court to enter an injunction prohibiting Defendant from disbanding the philosophy department.  While injunctive relief may be an appropriate remedy under 42 U.S.C. § 2000e-5(g) to prevent continued discrimination, enjoining Defendant from disbanding the philosophy department would not remedy Plaintiff's alleged gender-based wage discrimination claim.  These damages claims are not supported by applicable law and Defendant should not have to defend against them.  These claims are stricken.

### III.     CONCLUSION

THE COURT, being fully advised and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that the irrelevant and immaterial allegations set forth in paragraphs five to 16 of the fourth amended complaint, all allegations of anti-Semitism, all other scandalous and mean-spirited allegations aimed at Pendakur, Headley and Banchetti, and the prayer for liquidated damages and injunctive relief are STRICKEN from the fourth amended complaint.  It is further

ORDERED AND ADJUDGED that Defendant's motion to dismiss the fourth amended complaint and motion to strike, filed July 18, 2011 **[DE 41]**, is GRANTED.  The fourth amended

complaint is DISMISSED WITH PREJUDICE without leave to amend. The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 10th day of November, 2011.

<u>S/Kenneth L. Ryskamp</u>
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE